HOUSSELS et al. v. COE & HAMPTON.

(Court of Civil Appeals of Texas. Amarillo. June 21, 1913. Rehearing Denied Oct. 11, 1913.)

1. PARTNERSHIP (§ 220*)—ACTION—DESIGNATION—SUIT IN FIRM NAME.

Where a firm sued as the "Houssels Cotton Company," without naming the individuals composing the firm, answered as a firm doing business under the name specified, a judgment against the firm described by such name was sustainable as against it and sufficient to support an execution against the firm property.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 446–465, 467–469; Dec. Dig. § 220.*]

2. PARTNERSHIP (§ 204*)—ACTIONS—SERVICE OF PROCESS—PRESUMPTION.

Where a firm answered in its firm name, in which it was sued, it would be presumed, in the absence of anything to the contrary, that service was properly made on some member of the firm.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 376–381; Dec. Dig. § 204.*]

3. CHATTEL MORTGAGES (§ 48*)—CROP—COTTON—FIRST, ETC., "BALE."

A chattel mortgage on cotton described it as located in W. county, Texas, two miles southeast of V., to wit: "My first, second, third, seventh, and eighth bales of my crop of cotton, being produced this present crop, on the lands

---

owned by J. T. Dunson." The cotton was in fact grown on the land of J. T. J. Dunson, which was located in W. county two miles southeast of Rayland instead of Vernon. No such person as J. T. Dunson owned land in the county, and the cotton was in the mortgagor's possession. *Held,* that the word "bale" meant a distinct parcel or quantity of cotton packed together in a particular form; and, parol evidence being admissible to sustain the description otherwise, it was sufficient and conferred a lien on the first, second, third, seventh, and eighth lots of cotton baled for the mortgagor, regardless whether such lots, matured, were picked or ginned first or last.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 93–95; Dec. Dig. § 48.*]

4. CHATTEL MORTGAGES (§ 177*)—PURCHASE OF MORTGAGED PROPERTY—EVIDENCE.

In an action for conversion of mortgaged cotton, evidence *held* to warrant a finding that the cotton purchased by defendants included that mortgaged.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 336, 340–357, 477; Dec. Dig. § 177.*]

5. PLEADING (§ 433*)—JURISDICTION—AMOUNT IN CONTROVERSY—PRESUMPTION.

Where, in a suit in the county court for conversion of mortgaged cotton, there was no demurrer or special exception filed to the petition for failure to allege the value of the cotton, it would be presumed, after judgment, that the value was an amount within the jurisdiction of the court.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1451–1477; Dec. Dig. § 433.*]

6. NEW TRIAL (§ 26*)—OBJECTIONS—TIME TO RAISE.

An objection that the petition in an action for conversion of mortgaged cotton did not allege the value thereof could not be raised for the first time on a motion for a new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 37–39; Dec. Dig. § 26.*]

7. CHATTEL MORTGAGES (§ 177*)—DAMAGES—MARKET VALUE.

In an action for conversion of mortgaged cotton, the measure of damages is the fair market value of the property at the time of the conversion, provided such value does not exceed the amount sued for.

[Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 336, 340–357, 477; Dec. Dig. § 177.*]

Appeal from Wilbarger County Court; J. B. Copeland, Judge.

Action by Coe & Hampton against Bismark Houssels and others. Judgment for plaintiffs against defendant Houssels Cotton Company, and it appeals. Affirmed.

J. Shirley Cook and R. S. Houssels, both of Vernon, for appellant. Storey & Warlick, of Vernon, for appellees.

HALL, J. Appellees instituted this suit in the county court of Wilbarger county against J. D. Sparks, Bismark Houssels, and the Houssels Cotton Company. Plaintiffs alleged that defendant Sparks executed and delivered to them the note sued upon in the sum of $250 and at the same time executed a chattel mortgage upon certain cotton described therein, as follows: "Located in Wilbarger county, Texas, two miles southeast of Vernon, to wit: 'My first, second, third, sev-

enth, and eighth bales of my crop of cotton, being produced this present crop, on the lands owned by J. T. Dunson.'" It is further alleged that the appellees Bismark Houssels and the Houssels Cotton Company purchased the five bales covered by the mortgage with notice and converted the same to their own use and benefit. There was a prayer for judgment against Sparks for the amount of the note and for foreclosure of the mortgage lien and for judgment against appellants Houssels and the Houssels Cotton Company for the wrongful conversion of the mortgaged cotton.

The appellants answered by general denial and specially that if they purchased the cotton in suit, which was not admitted but denied, it was purchased upon the open market in the city of Vernon, without notice of appellees' claim, and that they paid full value therefor. The defendant Sparks not having been served with citation, plaintiff dismissed as to him. There was a trial before the court without a jury, and judgment was rendered in favor of defendant Sparks and Bismark Houssels that plaintiff take nothing as to them and in favor of plaintiffs against the Houssels Cotton Company for the sum of $155.79.

[1] The first error assigned by the appellant is that the court erred in rendering judgment against the Houssels Cotton Company, not naming any person or persons composing the firm, and that the judgment is therefore void for the want of a designated defendant. The pleadings do not show whether the Houssels Cotton Company is a partnership or a corporation, but it seems to be admitted in the briefs of the parties that it was a partnership. There is no allegation showing the names of the individuals composing the partnership, and the judgment is against "the Houssells Cotton Company."

[2] The Houssels Cotton Company having filed an answer as such, the judgment is sufficient to support an execution against the firm property; and, in the absence of anything in the record to the contrary, we must presume that service of process was properly had upon some member of the firm. Easterwood v. Burnitt, 126 S. W. 934, and authorities cited.

[3] Appellant's second, fifth, eleventh, twelfth, and thirteenth assignments of error raise the question of the sufficiency of the description of the property in the mortgage as notice to appellants. It is admitted by appellant that the property was situated two miles southeast of Rayland, in Wilbarger county, rather than two miles southeast of Vernon, and was produced upon lands owned by J. T. J. Dunson instead of J. T. Dunson. Appellants insist that the description is insufficient in the first place in that the mortgage does not state whether the first, second, third, seventh, and eighth bales

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

159 S.W.—55

of cotton were the "first," etc., bales matured, picked, ginned, and baled, and that the language furnishes no basis for the identity of the particular cotton covered by the lien. It is said in Penrice v. Cocks, 2 Miss. (1 How.) 227: "Cotton is the staple article of our commerce. and the term 'bale' conveys to the mind a distinct idea of a parcel or quantity packed together in a particular form." Under the laws of this state a mortgage given upon an unplanted crop of cotton is valid and is a lien thereon in all subsequent stages, and, if the property mortgaged is described as "bales of cotton," there is a lien upon the mortgagor's potential interest which becomes a lien upon the "bales" when the lint or bulk cotton, after being gathered and ginned, is formed into bales. Our construction of the language of this instrument is that the first, second, third, seventh, and eighth lots of cotton, baled for the defendant Sparks, were subject to the mortgage, whether such lots, matured, were picked or ginned first or last. By appropriate pleadings, the error in the exact location of the cotton as set out in the mortgage was explained and this allegation was followed by the evidence. There was in fact no misdescription of the property mortgaged. Omitting Dunson's third initial was immaterial. Kane v. Sholars, 41 Tex. Civ. App. 154, 90 S. W. 937; McDonald v. Morgan, 27 Tex. 503. The exact location in the county was misstated in naming Vernon instead of Rayland and in describing it to have been upon the land of J. T. Dunson instead of J. T. J. Dunson. It was shown that J. T. Dunson owned no land and that the crop was in the possession of Sparks. We think the trial court did not err in finding that the property was sufficiently described to put a man of ordinary prudence upon inquiry, which if properly prosecuted would lead to a full knowledge of the material facts.

As was said by Garrett, P. J., in the case of Ft. Worth National Bank v. Red River National Bank, 84 Tex. 369, 19 S. W. 517: "Written descriptions are to be interpreted in the light of the facts known to and in the minds of the parties at the time. They are not prepared for strangers but for those they are to affect, the parties and their privies. Defendant was bound to know that 95 head of 3, 4, and 5 year old steers on the home place of John H. Stone had been mortgaged. Parol evidence was admissible to show that the mortgagor had just that many steers on his home place, and that the steers remained thereon, and that those levied on were a part of the 95 head embraced in the mortgage. The language of the description that 'about 75 head are branded TEX and about twenty head are in various brands' does not render the more general description of 95 head located on the home place of John H. Stone void for uncertainty. Parol evidence may be resorted to to show that a particular article is included within the general words of the description."

In Harless v. Jester et al., 97 S. W. 138, it is said: "Any description which will enable third persons to identify the property, aided by inquiries which the mortgage itself indicates or directs, is sufficient. The property was described as diamond rings, mounted in Tiffany settings of 14 k. If rings answering this description were offered for sale or pledged, the mortgage so describing them being duly recorded, identity would be suggested, or at least inquiry would be suggested as to identity, which could readily have been verified or negatived by any reasonable effort in connection with information given by the instrument itself. Johnson v. Brown, 65 S. W. 485; Kaase v. Johnston, 5 Ind. T. 76, 82 S. W. 680; Sparks v. Bank, 115 Ky. 461, 74 S. W. 185, 78 S. W. 171; Blythe v. Crump, 28 Tex. Civ. App. 327, 66 S. W. 885."

The record in this case shows that defendant Sparks raised only ten bales of cotton that year upon the Dunson place; that he had six bales ginned at the plaintiffs' gin and two bales ginned by the Farmers' Union Gin at Rayland. The remaining two bales were gathered after he abandoned the premises and left the country. It is further shown that he sold the property to appellants and in person received the proceeds of the sales.

[4] It was the duty of the court to presume ownership of the entire eight bales from the fact that they were in possession of Sparks when sold. There was no proof that he cultivated any other land and obtained cotton from other premises or marketed more than eight bales, and in our opinion the evidence was sufficient to warrant the court in holding that the cotton purchased by appellants included the mortgaged property. Barker et al. v. Merchants' National Bank, 40 S. W. 171.

[5] The third assignment of error attacks the judgment because it is contrary to and not supported by the pleadings in that there is no allegation of the value of the cotton or any part thereof. In Forbes v. Moore, 32 Tex. 197, it is held that, in a suit for conversion of personal property, the petition must describe the property and give the value of each article, but this is a defect which must be brought to the attention of the court by special exception, and appellants filed only a general demurrer in the instant case.

[6] The question is not fundamental because it does not affirmatively appear that the county court had no jurisdiction of the amount in controversy, and we must presume that the value of the cotton upon which foreclosure was sought was an amount within the jurisdiction of the county court. It was too late to raise this question in a motion for new trial.

[7] Under the second proposition following the third assignment of error, and by the fourth assignment, the appellants challenge

the propriety of a judgment in the sum of $155.79. As stated, the suit was upon a note in the sum of $250, providing for 10 per cent. interest from date and 10 per cent. attorney's fees if sued upon. No payment has been shown, and no credit is stated in the pleadings of either party. The evidence is uncontroverted that, if appellants purchased the identical cotton upon which foreclosure was sought, they paid $296.91 therefor. By the testimony of Bismark Houssels this is shown to have been the amount paid Sparks for the entire eight bales, and his testimony is that he paid "really more than the market value in cash for the cotton at the time it was purchased." The record shows that the appellee's mortgage was postponed to the landlord's lien, and that Houssels had paid Dunson one-fourth of the value of the cotton purchased by him as rents. There was no prayer in the petition for interest.

While according to our calculation the amount of the judgment is not exactly what it should have been, the discrepancy is so slight that we do not feel justified in reversing the judgment for that reason. As said in Lincoln v. Packard, 25 Tex. Civ. App. 22, 60 S. W. 682, the measure of damages for conversion was the fair market value of the property, provided, of course, such market value did not exceed the amount sued for. No bill of exception was taken to the admissibility of this evidence for the purpose of proving value; and this point, not having been presented directly by any assignment of error, will not be considered further.

The sixth, seventh, eighth, ninth, and tenth assignments of error challenge the sufficiency of the evidence to identify the cotton. We have already discussed this question in disposing of former assignments, and in our opinion these assignments are without merit.

Finding no reversible error in the record, the judgment is affirmed.